**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| CHRISTOPHER S. MANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 8:07CV479 |
| vs. | ) | |
| | ) | MEMORANDUM AND |
| MOBILE MEDIA ENTERPRISES LLC, | ) | ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the court pursuant to 28 U.S.C. § 636 and the consent of the parties on the following motions:

Doc. 84   Defendant's Motion to Exclude Plaintiff's Expert's Testimony, and related filings 85 (Brief) 86 (Evidence Index), 94 (Plaintiff's Brief in Opposition), 95 (Plaintiff's Evidence Index), and 101 (Reply Brief)

Doc. 87   Plaintiff's Motion in Limine to Exclude the Testimony and Opinions of Defendant's Expert, Jeremy Cummings, and related filings 88 (Brief), 89 (Evidence Index), 97 (Defendant's Response Brief), 98 (Defendants' Evidence Index), and 102 (Reply Brief)

For the reasons discussed below, both motions will be denied without prejudice to reassertion and/or evidentiary objections at the time of trial.

**BACKGROUND**

On June 16, 2006, the defendant ("Mobile Media") hosted a tent at the NCAA College World Series for the purpose of marketing Cingular Wireless products. The tent included a "Hi Striker" or "Test Your Strength" game ("Game"), which required the participant to

swing at and strike a plate with a mallet which, upon impact, caused an object to elevate up a tower toward a bell. If the bell rang, the participant would win a prize.

Plaintiff was injured while playing the Game. When he swung the mallet and struck the plate, the rubberized end of the mallet immediately bounced off the plate, propelled backwards through the air, and struck plaintiff in the face, causing injuries to his face, eye and nose.

In his Second Amended Complaint, plaintiff has asserted claims for negligence, negligently supplying a chattel, and premises liability. Summarized, the defendant affirmatively alleges that any dangers associated with playing the Game are generally known and recognized by ordinary persons in the general public; plaintiff assumed the risk of injury; plaintiff was negligent or contributorily negligent; plaintiff failed to mitigate his damages; and Mobile Media met all applicable standards of care.

## DISCUSSION

Under Rule 401 of the Federal Rules of Evidence, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 702 permits the admission of expert opinion testimony "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

> District courts must ensure that all scientific testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 580 (1993); Fed. R. Evid. 702. The inquiry as to the reliability and relevance of the testimony is a flexible one designed to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case. *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000).
>
> To satisfy the reliability requirement, the proponent of the expert testimony must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid. *Daubert*, 509 U.S. at 589-90. To show that the expert testimony is relevant, the proponent must show that the reasoning or methodology in question is applied properly to the facts in issue. *Id.* at 591-93. Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility. *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998); *see also Arcoren v. United States*, 929 F.2d 1235, 1239 (8th Cir. 1991) (noting that Rule 702 "is one of admissibility rather than exclusion"). However, a court should not admit opinion evidence that "is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). When the analytical gap between the data and proffered opinion is too great, the opinion must be excluded. *Id.*

*Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-58 (8th Cir. 2006) (parallel citations omitted).

**A.   Applicable Law**

In ruling on the parties' motions, the court must consider the proposed expert testimony in the context of the claims and defenses actually raised in the pleadings. Since the court exercises diversity jurisdiction in this matter, *see* 28 U.S.C. § 1332, the court will

apply the substantive law of the forum. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Winthrop Resources Corp. v. Stanley Works*, 259 F.3d 901, 904 (8th Cir. 2001).

For personal injury claims, Nebraska follows the Restatement (Second) of Conflict of Laws § 146 (1971). *Heinze v. Heinze*, 274 Neb. 595, 599-600, 742 N.W.2d 465, 469 (2007); *Malena v. Marriott Int'l, Inc.*, 651 N.W.2d 850, 856 (Neb. 2002). Under Restatement § 146, "the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship ... to the occurrence and the parties...." *Malena*, 651 N.W.2d at 856.

In this case, the accident occurred in Omaha, Nebraska and any relationship between the parties is centered in Nebraska; therefore, Nebraska law controls the rights and liabilities of the parties to this action.

**B.   Ordinary Negligence; Duty of Care**

Under Nebraska law, "[o]rdinary negligence is defined as the doing of something that a reasonably careful person would not do under similar circumstances, or the failing to do something that a reasonably careful person would do under similar circumstances." *Wilke v. Woodhouse Ford, Inc.*, 278 Neb. 800, 811, 774 N.W.2d 370, 379 (2009). To prevail on a claim for ordinary negligence, the plaintiff must prove (1) there was a legal duty on the part of the defendant to protect the plaintiff from injury, (2) the defendant failed to discharge that

duty, and (3) damage to the plaintiff proximately caused by the defendant's failure to discharge that duty. *See id.* at 811, 774 N.W. 2d at 379.

> In negligence cases, a duty may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another. When determining whether a legal duty exists, a court employs a risk-utility test concerning (1) the magnitude of the risk, (2) the relationship of the parties, (3) the nature of the attendant risk, (4) the opportunity and ability to exercise care, (5) the foreseeability of the harm, and (6) the policy interest in the proposed solution.

*Id.* at 811, 774 N.W.2d at 380.

The factual allegations of the Second Amended Complaint demonstrate that the plaintiff was injured while using a device or chattel owned, controlled or operated by the defendant on a premises controlled by the defendant.

### 1.  *Chattels; Duty to Warn*

Under Nebraska law, "a supplier has a common-law duty to warn expected users that a chattel may be dangerous," as described in § 388 of the Restatement (Second) of Torts:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

>    (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Erickson v. U-Haul Intern., Inc.*, 274 Neb. 236, 242-43, 738 N.W.2d 453, 460 (2007) (quoting Restatement (Second) of Torts § 388 at 300-01 (1965)).

### *2.   Duty Owed to Lawful Entrants on Premises*

Under Nebraska law, a "lawful visitor [who] claims that he or she was injured by a condition on the owner or occupier's premises" may hold the owner or occupier liable if he or she can prove the following:

> (1) the owner or occupier either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) the owner or occupier should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) the owner or occupier should have expected that a lawful visitor such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4) the owner or occupier failed to use reasonable care to protect the lawful visitor against the danger; and (5) the condition was a proximate cause of damage to the lawful visitor.

*Aguallo v. City of Scottsbluff*, 267 Neb. 801, 807, 678 N.W.2d 82, 89 (2004). The factors relevant to "reasonable care" include

> (1) the foreseeability or possibility of harm; (2) the purpose for which the entrant entered the premises; (3) the time, manner, and circumstances under which the entrant entered the premises; (4) the use to which the premises are put or are expected to be put; (5) the reasonableness of the inspection, repair, or warning; (6) the opportunity and ease of repair or correction or giving of the warning; and (7) the burden on the land occupier and/or community in terms of inconvenience or cost in providing adequate protection.

*Heins v. Webster County*, 250 Neb. 750, 761, 552 N.W.2d 51, 57 (1996); *accord, Aguallo v. City of Scottsbluff*, 267 Neb. at 807, 678 N.W.2d at 89.

### B.  Plaintiff's Allegations of Negligence

In the Second Amended Complaint, plaintiff alleges the defendant was negligent in the following particulars:

- selecting, furnishing and offering the Hi Striker game,
- failing to provide a verbal or written warning of the risk of physical injury,
- failing to provide verbal or written warning of the risk the mallet would bounce off the strike plate,
- selecting and providing an unsuitable mallet,
- failing to warn plaintiff that the game was unsuitable for use by an adult,
- negligently constructing, installing and/or maintaining the game,
- failing to follow instructions supplied by the manufacturer,
- assigning unqualified employees to construct, install, maintain and/or operate the game, and
- negligently designing, constructing and/or manufacturing the game.

(Doc. 41, Second Amended Complaint at ¶ 13).

### C.  Opinions of Plaintiff's Expert, Anastasios D. Tsoumanis, Ph.D.

Dr. Tsoumanis obtained his M.S. in biomedical engineering from Northwestern University in 2002. He obtained his Ph.D. in biomedical engineering from the Illinois Institute of Technology in 2007. Dr. Tsoumanis' report states that his firm was retained by the plaintiff to inspect the Hi-Striker Game and to determine what caused this incident. He reviewed certain deposition testimony and medical records. He and his associates physically

inspected the device and the sledgehammers used.  The shorter hammer had a 20-inch-long handle and a rubber cylindrical striker, 4 inches in diameter.  The longer hammer had a 30-inch-long hammer and a rubber striker that was 5 inches in diameter.

They ran a series of tests, videotaped, with each of the hammers.  Dr. Tsoumanis reported that they were able to replicate the conditions under which the plaintiff's accident occurred.  When using the short hammer, the volunteer (who was wearing a football helmet to avoid injury) had to lean in close to the strike pad, "and that subsequently caused bounce-back of the hammer and strike to the face of the volunteer."  (Doc. 86-2 at p. 7/23).  While using the short hammer, the volunteer's swinging motion tended to be with both hands directly in front of the body in order to generate enough force to ring the bell.  While using the longer hammer, the swinging motion was over the shoulder and then in front of the body towards the striking pad.  When using the long handled sledgehammer, it was not necessary to lean close to the strike pad in order to achieve sufficient force to ring the bell.  They used Pressurex film to measure the pressure exerted on the strike pad.  Dr. Tsoumanis concluded that "the force applied on Mr. Mann's face was sufficient to cause the injuries sustained." (Doc. 86-2 at p. 4/23, ¶ 8).

Blood stains on the equipment suggested that the plaintiff had leaned forward and hit the front end of the strike pad with the short handled sledgehammer, which made the hammer bounce back directly toward plaintiff's face.  Dr. Tsoumanis concluded that "usage of the

longer sledge hammer would have not caused this incident as the body and face of Mr. Mann would have been further away from the strike pad area." (Doc. 86-2 at p. 11/23).

### D.   Opinions of Defendant's Expert, Jeremy R. Cummings, Ph.D.

Defendant's expert, Dr. Jeremy R. Cummings, obtained a Ph.D. in biomedical Engineering in 2001 from the University of North Carolina. His report (Doc. 89-1) indicates that he was retained to perform a biomechanical assessment of the accident. Dr. Cummings' assessment is based on a "video analysis" of the tests conducted and data compiled by Dr. Tsoumanis on September 21, 2009. Dr. Cummings was not present at the testing on September 21, 2009 and did not inspect the machine himself.

Basically, Dr. Cummings' report expresses disagreement with Dr. Tsounamis' methodology and conclusions. After reviewing the video and data, together with certain deposition testimony and the plaintiff's medical records, Dr. Cummings provided his own conclusions, which appear to be no less speculative than those of Dr. Tsounamis. He essentially accuses Dr. Tsounamis of enhancing or even falsifying the data, opining that Dr. Tsounamis' volunteers used "active muscle recruitment" to pull the mallet towards the tester's face "in excess of the force due to gravity, which would not be a fair or accurate attempt at the game." (Doc. 89-1 at ¶ 10).

### E.   Conclusion

As the defendant notes in its brief (Doc. 97 at p. 4/15), this game, or "striking machine" has existed for over 100 years. *See also, e.g., Wodnik v. Luna Park Amusement*

*Co.*, 69 Wash. 638, 125 P. 941 (1912).  It is uncontroverted in this case that the plaintiff selected the shorter mallet, hit the strike plate, and was injured when the hammer bounced back and hit him in the face.

Based on my review of the issues actually raised in the parties' pleadings, the identity of the parties, the applicable standard(s) of care, and the two expert witnesses' reports, I am strongly inclined to exclude the opinions of both expert witnesses at trial.  Dr. Tsounamis might be able to provide relevant admissible testimony, as a fact witness, based on his physical inspection of the Game.  Other than that, it does not appear to the court that either expert opinion would "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  That said, the Eighth Circuit has held that "[c]ourts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d at 758.  For this reason only, both motions in limine will be denied without prejudice to reassertion and/or evidentiary objections at the time of trial.

**IT IS SO ORDERED.**

**DATED May 12, 2010.**

                  **BY THE COURT:**

                  **s/ F.A. Gossett**
                  **United States Magistrate Judge**